IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KENNETH L. GRAY,<br><br>    Plaintiff,<br><br>vs.<br><br>GENERAL ELECTRIC COMPAY ("GE"), a/k/a GE CAPITAL FINANCIAL, INC., a/k/a GE CONSUMER FINANCE a/k/a GE MONEY, a/k/a GE CORPORATE PAYMENT SERVICES, a/k/a GECF, a New York corporation doing business in Utah,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO STRIKE AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:10-CV-202 TS<br><br>The Honorable Ted Stewart |

This matter is before the Court on Defendant GE's Motion for Summary Judgment on the remaining claim in this action.[1] Also before the Court is pro se Plaintiff Kenneth L. Gray's Motion to Strike Docket No. 58-1.[2] For the reasons discussed below, the Court will deny Plaintiff's Motion to Strike and grant Defendant's Motion for Summary Judgment.

---

[1]Docket No. 51.

[2]Docket No. 64.

1

I. BACKGROUND

Mr. Gray previously worked for GE. As a condition of employment with GE, Gray agreed in writing to resolve any future employment dispute through binding arbitration as described in the GE "RESOLVE Program Handbook" and "RESOLVE Guidelines" (collectively "RESOLVE Agreement").[3] When Gray's employment ended, he and GE participated in the early levels of the RESOLVE process, but no resolution was reached.[4] Before arbitration actually occurred, Gray stopped participating in the RESOLVE process and stated that he would no longer open, read, or respond to correspondence regarding the RESOLVE process.[5] GE moved forward with the arbitration and on November 5, 2009, the arbitrator granted GE's motion for summary judgment, which resolved all of the issues in the matter.[6]

While the arbitration process was proceeding without Gray, he filed two actions against GE in the Federal District Court of Connecticut (the "Connecticut Court"). Gray's second action against GE ("the Connecticut Action") alleged, among other things, that GE: induced him to enter into a fraudulent arbitration agreement; failed to provide an impartial arbitration administrator as required by the RESOLVE Agreement; obstructed the timely execution of the terms of the RESOLVE Agreement; misrepresented the terms of the RESOLVE Agreement regarding appeals; and abused the intent of the Federal Arbitration Act.[7] Gray sought to have the

---

[3]Docket No. 52-3, at 22.

[4]Docket No. 52, at 3 (undisputed in Docket No. 54, at ix).

[5]*Id.* at 10 (undisputed in Docket No. 54, at xiv).

[6]*Id.* at 10 (undisputed in Docket No. 54, at xiv).

[7]Docket No. 52-3, at 2-3 & 15-17.

RESOLVE Agreement declared void so that he could proceed with his employment complaints in a court of competent jurisdiction.[8]

GE filed a motion to dismiss in the Connecticut lawsuit seeking "an order dismissing Plaintiff's Amended Complaint and compelling arbitration on any procedural violations he claims with respect to pending claims that are subject to" the RESOLVE Agreement.[9] The Connecticut court granted GE's motion and stated in part:

> Plaintiff asserts a violation of the agreement because defendant terminated the arbitration administrator but the record does not sustain that contention. To the contrary, the appointed administrator has stated that she remains as such. While defendant's counsel is claimed to have acted as might an administrator, such were only procedural acts designed to move the arbitration to fruition. They did not compromise his right to get his claims resolved by the arbitration process. The AAA form filed was not represented as joint, contrary to the citation of exhibits G and H to plaintiff's memorandum. It incorporated plaintiff's unsigned submitted form LV4B, which he characterized as his "complete arbitration submission," without comment. The suggestion of Denver, as the location of AAA's closest office, for the arbitration location was in strict compliance with the agreement. Plaintiff was not forced to accept Denver as he was offered the opportunity to discuss another location, an opportunity which he has not shown that he availed himself of. One can hardly fault a choice of site for the arbitration which conforms to the terms of the agreement as to determination of the site absent the parties agreement, particularly when the opposing party holds open the chance to discuss a more convenient location.
> For all the forgoing reasons, plaintiff's claims of fraud in the inducement and breach of the agreement are without merit and his motion is denied.
> The forgoing also requires a finding that plaintiff's objections to defendant's motions are without merit and accordingly the motion to compel arbitration is granted and plaintiff is ordered to comply with the requirements of the agreement and the AAA to place his claims before an AAA designated arbitrator forthwith. The motion to dismiss the complaint is granted. The Clerk shall close the case.[10]

---

[8]*Id.* at 15-17.

[9]Docket No. 52-4, at 2.

[10]Docket No. 52-5, at 3-4 (internal citations to the record omitted).

In response to the Connecticut Court's order, Gray attempted to re-initiate the arbitration process on his underlying wrongful termination claims. Gray was informed by GE and the American Arbitration Association ("AAA") that his wrongful termination claims had already been arbitrated based on his first submission. During the course of the arbitration, GE and the AAA attempted to contact Gray with regard to various deadlines and submissions. Gray's typical response was to deny any involvement in the arbitration process: "I am deleting this email (and any future correspondence) without reading it or opening the attachments. I am not a party in any arbitration hearing and never have been."[11] Counsel for GE sent a letter to Gray with regard to his second request for arbitration explaining:

> The Court did not compel arbitration of your claims for wrongful termination, libel, slander, invasion of privacy, infliction of emotional distress, or due process, nor could it have done so, as those claims were not before the Court. Simply put, you only asserted FAA claims in the Connecticut Action, and the Court only ordered you to arbitrate those FAA claims.[12]

Counsel for GE then invited Gray to re-submit an arbitration submission form that contained the FAA claims as submitted to the Connecticut Court. Gray instead chose to file the current action in Utah State Court on February 12, 2010. On March 5, 2010, GE removed the action to this Court.

---

[11] Docket No. 52-1, Ex P.

[12] Docket No. 52-7, Ex A (Letter from Durham to Gray, Feb. 10, 2010).

## II. STANDARD OF REVIEW

"Plaintiff is proceeding pro se and, as a result, the court construes his pleadings liberally and holds his pleadings to less stringent standards than formal pleadings drafted by lawyers."[13] However, as a pro se litigant Plaintiff must still "follow the same rules of procedure that govern other litigants."[14] The Court also notes that Plaintiff is a sophisticated and experienced litigant.

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[15] The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact.[16] "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial."[17] "An issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[18]

## III. ANALYSIS

As a preliminary matter, Gray seeks to have this Court strike GE's Appendices to its Reply Memorandum in Support of Defendant's Motion for Summary Judgment (Appendices).[19]

---

[13]*Bryner v. Bryner*, 2009 WL 2920376, at *3 (D. Utah Sept. 11, 2009) (citing *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002)).

[14]*Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

[15]*See* Fed.R.Civ.P. 56(a).

[16]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[17]*Sally Beauty Co., Inc., v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

[18]*Id.* at 972 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[19]*See* Docket Nos. 65 & 58-1.

The Court denies Gray's Motion to Strike for two reasons. First, this Court has previously found that such appendices are proper where they do not present any new legal arguments.[20] Here, the Appendices merely present the facts that are in dispute and do not raise any new legal arguments. As such, GE's submission of the Appendices as an Exhibit to its Reply is not improper. Second, the Court did not rely upon the Appendices in reaching a decision on GE's Motion for Summary Judgment and as such the Motion to Strike is moot.

GE's Motion seeks summary judgment on Gray's remaining claim for breach of contract.[21] GE argues that it is entitled to summary judgment because: (1) Gray's claims should be barred under the doctrine of res judicata because Gray made the same claims in his lawsuit before the Connecticut Court; (2) Gray's claim is unsupported by the facts as "Gray himself initiated the arbitration and then, bizarrely, refused to participate in it or obtain a stay;" and, (3) the order of the Connecticut Court does not subject the already-arbitrated claims to another round of arbitration.[22]

Gray contends that summary judgment should be denied because GE has not shown conclusively that this case and the Connecticut Action contain identical causes of action as required under the doctrine of res judicata and because "material facts in this case are disputed, and there is a prima facie case asserting that Defendant initiated and organized an illegitimate mock arbitration hearing, defied the order of the Connecticut Court to commence arbitration

---

[20]*See Adams v. Gateway, Inc.*, 2004 WL 2061884 (D. Utah 2004).

[21]*See* Docket No. 18, at 7.

[22]Docket No. 52, at 1-2.

forthwith, and thereby denied Plaintiff his rights under the GE RESOLVE Process contract to arbitrate his claims."[23]

A.   RES JUDICATA

Res judicata, otherwise known as claim preclusion, prohibits a party from re-litigating issues that were raised in a prior action where there was a final judgment on the merits.[24] Since the Court is determining the effect of an order of a federal court, federal law of claim preclusion applies.[25] The Tenth Circuit, in *Mitchell v. City of Moore, Oklahoma*, held that, "[i]n our Circuit '[c]laim preclusion requires: (1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits.'"[26] "Put another way, the doctrine of claim preclusion prevents 'the parties or their privies from relitigating issues that were or could have been raised in' an earlier action."[27]

Neither party disputes that the prior suit involved the same parties. It is also clear that the Connecticut Court entered an order which was a judgment on the merits in the prior suit.[28]

---

[23]Docket No. 54, at vii (internal citations and quotations omitted).

[24]*Fransden v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995).

[25]See *Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 687 (10th Cir. 1992) (citing, inter alia, Restatement (Second) of Judgments § 87, at 314 (1982) ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court.")).

[26]218 F.3d 1190, 1202 (10th Cir. 2000) (quoting *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999)).

[27]*Id.* (quoting *Clark v. Haas Grp., Inc.*, 953 F.2d 1235, 1238 (10th Cir. 1992) *cert. denied,* 506 U.S. 832 (1992)).

[28]*Bartlett v. Wells*, 2009 WL 1146990, at * 4 (D. Utah 2009) ("Dismissal of a case for failure to state a claim upon which relief can be granted constitutes a judgment on the merits.").

The element remaining to be determined is whether the prior suit involved the same cause of action for purposes of res judicata.

The Tenth Circuit has "adopted the transactional approach of the Restatement (Second) of Judgments to determine what constitutes a 'cause of action' for res judicata purposes."[29]

> The transactional approach provides that a final judgment extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What constitutes a transaction or a series is to be determined pragmatically considering whether the facts are related in time, space, origin, or motivation, and whether they form a convenient trial unit.[30]

In reviewing an employment claim, the Tenth Circuit held that "[o]ur case law seems to stand for the proposition that all claims arising from the same employment relationship constitute the same transaction or series of transactions for claim preclusion purposes."[31] The Court went on to state, however, that "the doctrine of claim preclusion does not necessarily bar plaintiffs from litigating claims based on conduct that occurred after the initial complaint was filed."[32]

GE argues that "Gray's FAA claim in the Connecticut Action and his breach of contract claim in this action are based on the same transactional nucleus of facts" and as such Gray's

---

[29]*King v. Union Oil Co., of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997) (citing *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1335 (10th Cir. 1988)).

[30]*Id.* (citing *Lowell Stats Mining Co., Inc., v. Phila. Elec. Co.*, 878 F.2d 1271, 1274 (10th Cir. 1989)).

[31]*Mitchell*, 218 F.3d at 1202 (citing *Clark*, 953 F.2d at 1239).

[32]*See Id.* at 1202-03 (citing *Johnson v. Bd. of Cnty. Comm'rs of Johnson Cnty., Kan.*, 1999 WL 1423072, at *3-4 (D. Kan. Dec. 9, 1999) ("Because a plaintiff has no obligation to expand his or her suit in order to add a claim that he or she could not have asserted at the time the suit was commenced, res judicata does not bar a second lawsuit to the extent that suit is based on facts occurring after the first suit was filed.")).

breach of contract claim should be barred.[33] If Gray's claim is based on the same transaction, or series of transactions, and could have been raised in the earlier action, it should be barred.

Gray's breach of contract cause of action includes, with incorporation, forty-four paragraphs. The first 29 paragraphs layout the same sequence of facts that formed the basis of the Connecticut Action, including describing the four-step process Gray undertook under the RESOLVE agreement.[34] Further, Gray includes many of the same allegations, including that GE submitted an illegal request for arbitration that was invalid because he did not sign the LV4B form and that GE's partisan counsel usurped the role of the claim administrator and secretly created and submitted its own LV4B form as a joint submission of parties.[35] The Connecticut Court considered the same employment relationship and held that defendant's counsel's acts were only procedural acts designed to move the arbitration to fruition and that the AAA form filed was not represented as joint, and was valid.

Further, the facts involve the same employment relationship that constituted the transaction from which Gray based his claims in the Connecticut Action. Though Gray has titled the allegations differently in each complaint, the test for "cause of action" for purposes of claim preclusion is not based on the type of claim brought, but on whether the claim arises from the same transaction as the previous case. The Court will preclude the pleading of any claim based on the employment relationship transaction that Gray could have brought during the previous action. Because the Connecticut Court reviewed the propriety of the initial arbitration

---

[33]Docket No. 52, at 15 (internal quotations omitted).

[34]*See* Docket No. 18, at 7-9.

[35]*Id*. at 9-11; *see also* Docket No. 52-3, at 15 (Gray's Connecticut complaint Second Claim for Relief).

9

submission, the Court finds that the arbitration submission was the transaction that gave rise to the previous action. As such, Gray's claim that GE violated the RESOLVE agreement by requesting and promoting a mock arbitration is barred by claim preclusion.

Gray argues that "the U.S. Supreme Court has ruled that claim and issue preclusion do not apply if a party did not have a full and fair opportunity to litigate his claim. Gray cites to a U.S. Supreme Court case, *Montana v. United States,* to support his assertion that his claims should not be precluded because he has not been given a full and fair opportunity to litigate his claims, and argues that "this is the controlling decision on the matter before this Court."[36] In citing to *Montana*, Gray seems to blend the requirements of the doctrine of res judicata with that of collateral estoppel. The Tenth Circuit and Supreme Court have recognized that the two doctrines are closely related, and, because of the frequent confusion of the two doctrines, courts have begun to refer to them as claim preclusion and issue preclusion.[37]

In *Montana*, while the Supreme Court discussed both preclusion doctrines, the Court decided the case under the doctrine of collateral estoppel.[38] Thus, the Court's discussion of ensuring that "a party . . . have a full and fair opportunity to litigate his claim" was limited to issue preclusion and did not include claim preclusion. Although GE may be entitled to collateral estoppel on many of the issues raised in Gray's Complaint, this is not the relief that GE seeks through this Motion. Res judicata does not bar Gray's claims that arose after he filed his complaint with the Connecticut Court, including Gray's claim that GE failed to abide by the

---

[36]Docket No. 54, at 5 (citing *Montana v. United States*, 440 U.S. 147 (1979)).

[37]*See SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir. 1990) (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 376 n.1 (1985)).

[38]*See* 440 U.S. at 153-55.

Connecticut Court's order. It is unusual to bring such a claim in this Court rather than the court that issued the order, but such a claim would not be barred by res judicata solely because it arose after Gray filed his original complaint.

B.  BREACH OF CONTRACT CLAIM UNSUPPORTED BY FACTS

GE also asserts that this Court should grant summary judgment on Gray's breach of contract claim because "the undisputed facts show that [GE] fully complied with the RESOLVE agreement and that Gray inexplicably refused to participate in the arbitration after he initiated it."[39] Gray contends that GE violated the RESOLVE agreement by holding the mock arbitration because: (1) Gray did not initiate the arbitration; (2) Gray was not represented in the mock arbitration hearing; and, (3) GE did not inform the Connecticut Court that it was holding a mock arbitration even while seeking a motion to compel arbitration.

Gray has consistently argued that he did not initiate the arbitration proceeding because he did not sign the LV4B form, did not pay a $50 fee to AAA, and because counsel for GE took over the duties of the Resolve Administrator. These same issues were brought in the Connecticut Action and the Connecticut Court ruled that the process was initiated properly and GE acted appropriately. The Court finds, in accordance with the Connecticut Court, that the arbitration process was initiated properly.

It is undisputed that Gray was not present during the arbitration hearing. It is also clear that Gray took steps to make himself unaware of what was occurring during the arbitration process. Gray requested, on at least two occasions, that AAA cease contacting him regarding

---

[39]Docket No. 52, at 17.

the arbitration.[40] Indeed, Gray refused to participate in the arbitration process despite multiple efforts by GE and the AAA to encourage his participation. Gray went so far as to change his email address so as not to receive notices of the arbitration.[41] Particularly telling is Gray's principal objection in this Motion to the correspondence regarding the pending arbitration: "Plaintiff denies that the communication from [AAA] was binding on anyone since it was in response to Defendant's communication regarding organizing a mock arbitration hearing that was not authorized under the terms of the contract."[42] This statement is in direct conflict with the Connecticut Court order, which held that the arbitration was properly submitted. Gray's objections that he had no knowledge of the arbitration occurring and that Defendants held the arbitration with him in absentia is belied by the evidence of numerous correspondence sent to Gray by both GE and AAA.[43]

Moreover, Mr. Gray's claim that holding the arbitration with him in absentia is a breach of the RESOLVE agreement is disproved by the correspondence sent to both parties by AAA. AAA notified Gray and GE on May 29, 2009, that pursuant to Rule 1 of the applicable AAA rules of arbitration:

> The parties shall be deemed to have made these rules a part of their arbitration agreement . . . If within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 60 days to permit the

---

[40] Docket No. 52-1, Exs. L & P

[41] *See id.*, Exs. E, G, L & M.

[42] Docket No. 54, at xiii.

[43] *See* Docket No. 52-1, Exs. C-I & K-P; *see also* Docket No. 54, Ex 1.

12

party to obtain a stay of arbitration from the court.[44]

AAA also informed the parties that "absent court documents or party agreement, we will continue forward with the arbitration."[45] AAA's correspondence makes clear that the AAA policy was to defer to judicial intervention but not cease arbitration unless such was requested from and mandated by a court. AAA sent this information to Gray the day after he requested that it "[p]lease cease all correspondence . . . unless your legal staff has some questions for me."

The facts demonstrate that Gray chose to not be represented in the arbitration proceeding. Both GE and AAA attempted to communicate with Gray and make him aware of the continuing proceedings and the actions he would need to take to stay such proceedings. Gray's willful ignorance and voluntary failure to participate in the arbitration are not reasons to later claim that the arbitration was somehow invalid and a breach of the RESOLVE agreement. In sum, on the undisputed facts it is apparent that GE did not hold a "mock arbitration" with Plaintiff in abstentia. Rather, GE held an arbitration in which Gray refused to participate.

C.   FAILURE TO RE-ARBITRATE

Lastly, Gray alleges that GE breached the RESOLVE agreement by defying the Connecticut Court's order to arbitrate his underlying wrongful termination claims. GE contends that Gray misinterprets the order; that the Connecticut Court could not have ordered that they arbitrate the wrongful termination claims because those claims were not properly before the Connecticut Court; and further, that GE's failure to submit to another round of arbitration on the

---

[44]Docket No. 52-1, Ex. L.

[45]*Id.*

13

underlying issues was not a breach of the RESOLVE agreement.

The RESOLVE agreement clearly sets out the requirement to arbitrate and the deadlines to submit claims to arbitration.[46] It is not clear, however, why an alleged failure to abide by the Connecticut Court's order constitutes a breach of the RESOLVE agreement. Gray fails to cite to any section of the RESOLVE agreement to support his assertion that such is the case.

It appears to the Court that the remedy that Gray seeks is to compel enforcement of his interpretation of the Connecticut Court's order. If Gray desires to have the Connecticut Court order enforced, he should file an order to show cause before the Connecticut Court requiring GE to demonstrate why they have not complied with the order. Gray could then seek to have GE held in contempt for failing to abide by the Connecticut Court order. As the Supreme Court has noted, "[c]ivil contempt proceedings may be employed 'for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.'"[47] If Gray feels that GE has not complied with the Connecticut Court's order and that he has sustained a loss as a result, a civil contempt proceeding before the Connecticut Court would provide the remedy he improperly seeks before this Court.

Furthermore, Gray could also bring before the Connecticut Court an action under 9 U.S.C. § 4. Through such action Gray could compel GE to arbitrate as previously mandated in

the Connecticut Court order. This Court however, lacks authority to compel arbitration in

---

[46]*See* Docket 54, Ex. B, at 25.

[47]*Local 28 of Sheet Metal Workers' Intern. Ass'n v. E.E.O.C*. 478 U.S. 421, 443 (1986) (quoting *United States v. Mine Workers*, 330 U.S. 258, 303-304 (1947)).

another district.[48]

Gray appears to have couched this claim improperly in a breach of contract action. Such may be the result of Gray's bringing this action pro se; or, this may be a misguided attempt to rescind the arbitration agreement so that Gray can bring his underlying claims before this Court. In either case, the Court finds that Gray has alleged no genuine issue of material fact and GE is entitled to judgment as a matter of law.

## IV. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion to Strike Docket No. 58-1 (Docket No. 64) is DENIED and Defendant's Motion for Summary Judgment (Docket No. 51) is GRANTED.

DATED   June 3, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[48]*Marine Life Scis., Inc., v. Unique Sea Farms, Ltd.*, 2010 WL 1506910, at *2 (D. Utah 2010) ("a district court lacks authority to compel arbitration in other districts, or in its own district if another has been specified for arbitration . . . any other result renders meaningless the § 4 mandate that arbitration and the order compelling arbitration issue from the same district") (internal citations and quotations omitted)).